IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JANE DOE, *

Plaintiff, *

v. * Case No. TJS-25-1641

INDEPENDENCE COURT OF HYATTSVILLE, LP, et al., *

*

Defendants.

* * * * * *

**MEMORANDUM OPINION**

Pending before the Court is the Motion for Summary Judgment filed by Defendants Independence Court of Hyattsville, LP ("Independence Court") and Priority Life Care, LLC ("Priority Life").[1] ECF No. 31. Having considered the parties' submissions (ECF Nos. 31, 32 & 47), I find that a hearing is unnecessary. Loc. R. 105.6. For the following reasons, Defendants' Motion will be denied.

## I. BACKGROUND

### A. Factual Background

This lawsuit arises from the horrific and tragic sexual assault of Plaintiff Jane Doe at Independence Court, an assisted-living facility operated and managed by Priority Life.[2] ECF No. 31-1, ¶ 1. Mrs. Doe—a then-90-year-old with dementia—was admitted to Independence Court at

[1] In accordance with 28 U.S.C. § 636(c), all parties have voluntarily consented to have the undersigned conduct all further proceedings in this case, including trial and entry of final judgment, and conduct all post-judgment proceedings, with direct review by the Fourth Circuit Court of Appeals, if an appeal is filed. *See* ECF No. 18.

[2] Unless otherwise noted, these facts are not in dispute.

the Enhanced Care Level II, which means Defendants were to provide Mrs. Doe with room, board, and three daily meals, and to assist with dressing, bathing, routine grooming and hygiene, and medication administration. ECF No. 32-1, at 3; ECF No. 33, at 1, 16. Mrs. Doe also needed assistance getting out of bed and managing her room and possessions. ECF No. 34. Mrs. Doe asserts that because of her limited mobility, her bedroom door was supposed to be locked anytime she was alone in her room. ECF No. 32-1, at 1. Defendants were responsible for securing areas that residents, like Mrs. Doe, could not access or secure themselves. *Id.* at 17–18; ECF No. 37, at 100:20–101:2, 104:16–105:5.[3]

On September 17, 2024, sometime before 9:00 p.m., a third-party assailant entered the Independence Court facility, most likely through an exterior door connected to the kitchen. ECF No. 31-1, ¶ 31; ECF No. 32-1, at 1. From the kitchen, the assailant entered the residential hallway and then Mrs. Doe's room. ECF No. 32-1, at 7. Mrs. Doe's door was unlocked. *Id.* at 3. The assailant sexually assaulted Mrs. Doe. *Id.* at 4. After the attack, the assailant fled Mrs. Doe's room and then the building through the kitchen's exterior door. ECF No. 31-1, ¶¶ 29, 30. Mrs. Doe was later discovered lying in her bed with her pants pulled down and her diaper ripped. ECF No. 32-1, at 4. A medical examination confirmed she had been sexually assaulted. *Id.*

There is no history of anyone burglarizing or gaining unauthorized access to Independence Court or a resident's room, and no history of sexual assault by third parties at Independence Court. ECF No. 31-1, ¶¶ 15–20. The assailant who burglarized Independence Court and assaulted Plaintiff is unknown to the facility. *Id.* ¶ 25. However, homeless individuals have loitered in the area and tried to enter the property, and youths in the neighborhood have broken the locks on the gates in the courtyard. ECF No. 32-1, at 8; *id.*, Ex. 13, at 19:25–20:41.

[3] Citations refer to transcript page numbers rather than the CM/ECF page numbers.

Both parties agree that the kitchen's exterior door should have been locked 24 hours a day; however, the parties contest whether the door was secured prior to the attack and whether Defendants were on notice of any potential security deficiencies. Per the Defendants, "[a]ll employees, residents and guests enter and exit the building through the front lobby door, which is locked 24 hours per day with a keypad (for employees) and a 'buzzer' (for residents and guests) to request entry." ECF No. 31-1, ¶ 4. The kitchen's exterior door is "solely used by dietary staff to take out trash to the dumpsters located outside the kitchen." *Id.* ¶ 5. Defendants contend that the exterior door automatically locks when it closes. *Id.* ¶ 3. Additionally, the State of Maryland's Office of Health Care Quality, Prince George's County Fire Department, and Prince George's County Long-Term Care Ombudsman Program conduct inspections of Independence Court, and there is no evidence from those inspections of deficiencies with the exterior doors in the years prior to the attack. *See id.* ¶¶ 7, 9, 10–14.

Conversely, Mrs. Doe contends that the door had a history of not closing and locking and that it was not alarmed, monitored, or properly secured. ECF No. 32-1, at 1. On the night of the attack, police officers arrived at Independence Court to investigate. *Id.* at 5–6. According to Detective Diaz-Cruz, when she inspected the exterior kitchen door after the assault, the door was not secured. *Id.* at 6. She knew this because she was able to open the exterior door by lightly tapping the door with her foot and without having to engage the push bar. *Id.* She had to use "a lot of force" to lock the door because pulling the door gently was not enough to lock it. *Id.* at 7; ECF No. 39, at 53:10–12. Additionally, the exterior kitchen door does not have an alarm. ECF No. 32-1, at 8; *id.*, Ex. 13, at 11:25–40. Executive Director Marla Von Stein offered conflicting statements regarding whether she knew that the exterior door would "stick" and if so, how often. ECF No. 32-1, at 24–25; ECF No. 37, at 291:3–293:1, 296:2–20; *see* ECF No. 32-1, Ex. 12, at 16:21–21:36.

Independence Court later determined that the top screws were missing from the kitchen door and the door needed to be readjusted. ECF No. 31-1, ¶ 32. Additionally, there are no surveillance cameras on the property. ECF No. 32-1, at 8.

The parties also contest which tasks are completed during "rounds" conducted by staff. Defendants assert rounds include checks on "every resident, windows and doors," every two hours. ECF No. 31-1, ¶ 6. Mrs. Doe points to testimony from two employees that rounds include visual checks on the exterior doors, and from a third employee that rounds include taking vital signs and observing patients (with no mention of checking entry points). ECF No. 32-1, at 9.

Further, Mrs. Doe contends that at or around 8:00 p.m. on the night in question, Nancie West, a family member of another resident, notified two employees at the front desk that an unknown male individual was in the dumpster area directly outside of the exterior kitchen door.[4]

[4] Defendants argue that the Court cannot rely on Ms. West's affidavit because it was created after discovery closed. ECF No. 47, at 8–9. The Court disagrees. The existence of Ms. West as a witness was no surprise to Defendants. Mrs. Doe disclosed Ms. West as a person with discoverable information relevant to her claims. *See id.* at 9. While the description of Ms. West's knowledge produced in discovery did not address Ms. West's contact with Independence Court employees *before* the assault, it is not clear that Mrs. Doe knew of this pre-assault contact before discovery closed. Even so, any party could have deposed Ms. West during discovery, and there is no suggestion that Ms. West refused to appear for such a deposition. Further, the Court disagrees with Defendants that Mrs. Doe was required to secure Ms. West's affidavit during discovery. While Rule 56(c) envisions that parties may use affidavits and declarations to support their factual positions, the federal rules do not dictate a procedure obtaining such affidavits and declarations. Parties may continue to gather facts after discovery has closed even if they are no longer permitted to use the formal discovery tools provided in the federal rules. The affidavit is dated April 16, 2026 and was produced to Defendants the same day. The Court is without a basis to conclude that Mrs. Doe improperly withheld the document during discovery such that it would be automatically inadmissible under Rule 37(c)(1). And assuming the affidavit is inadmissible for this reason, a court may consider "the content or substance of otherwise inadmissible materials where the 'party submitting the evidence shows that it will be possible to put the information into an admissible form.'" *Savage v. Fed. Home Loan Mortg. Corp.*, No. JKB-19-2482, 2021 WL 5330345, at *7 (D. Md. Nov. 16, 2021) (citing *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015)). Ms. West's affidavit, submitted under the penalty of perjury, is based on her personal knowledge and observations. The Court finds the evidence may be

ECF No. 32-1, at 4. Ms. West then went to her family member's room for about 10 minutes. *Id.* When Ms. West exited from her family member's room, the two employees were still at the front desk. *Id.* at 4–5. Ms. West spoke with them for about 10 minutes before one of the employees left to complete her rounds. *Id.* at 5. Ms. West continued speaking with the remaining employee at the front desk when she heard the other employee scream from the hallway. *Id.* The employee had screamed because she encountered the assailant. *Id.*

### B. Procedural Background

Mrs. Doe filed this lawsuit in the Circuit Court for Prince George's County, Maryland, alleging negligence against each Defendant. ECF No. 1-1. On May 22, 2025, Defendants removed the action to this Court based on diversity jurisdiction. ECF No. 1. Following the close of discovery, Defendants moved for summary judgment on all counts.[5] ECF No. 31.

---

admissible as live witness testimony, and therefore, considers it for purposes of resolving the Motion.

[5] Defendants argue that because Mrs. Doe did not submit a response to their Statement of Facts, explicitly noting whether each fact is "disputed" or "undisputed," this Court "must consider all 32 facts set forth by Defendants as undisputed and grant summary judgment." ECF No. 47, at 3 (citing Fed. R. Civ. P. 56(e); *Mathis v. Hargrove*, 166 Md. App. 286 (2005)). Not so. First, in *Mathis*, the state court applied state procedural law, which does not apply here. Second, per Rule 56(e), "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court *may* . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment *if the motion and supporting materials . . . show that the movant is entitled to it*." Fed. R. Civ. P. 56(e) (emphases added). Neither Rule 56 nor this Court's Local Rules require an opposing party to submit paragraph-by-paragraph admissions or denials of a movant's statement of "undisputed facts." Mrs. Doe's Opposition identifies evidence that creates genuine disputes of material fact. The Court declines to deem Defendants' asserted facts as undisputed merely because Mrs. Doe did not respond to the Motion in the manner that Defendants preferred. As the Court has explained before, statements of "undisputed facts" are rarely undisputed. And this Court has previously criticized the inclusion of such statements of undisputed facts in summary judgment briefs. *See Wang v. AMDEX Corp.*, No. TJS-22-2266, 2024 WL 964667, at *6 n.5 (D. Md. Mar. 6, 2024); *Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.*, No. SKG-10-254, 2011 WL 4007948, at *2 (D. Md. June 17, 2011). They tend to make briefs longer, more confusing, and generally less helpful. The Court declines to consider Defendants facts as "undisputed" and therefore addresses the merits of Defendants' Motion.

### C. Choice of Law

Maryland adheres to the principle of *lex loci delicti* to determine the applicable law in tort actions. *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 744 (2000). Under this rule, the "substantive tort law of the state where the wrong occurs governs." *Hauch v. Connor*, 295 Md. 120, 123 (1983). Because the attack took place in Maryland, Maryland law governs Mrs. Doe's negligence claims.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). A party must cite to "particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

## III. DISCUSSION

To prevail on a claim of negligence in Maryland, a plaintiff must prove the following elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Valentine v. On Target, Inc.*, 353 Md. 544, 549 (1999). Defendants move for summary judgment on the ground that they owed no duty to Mrs. Doe to protect her against the criminal activity of a third party. The parties have not cited, and the Court has not found, case law that deals with the issue of duty on substantially similar facts.

Duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Hartford Ins. Co. v. Manor Inn of Bethesda, Inc.*, 335 Md. 135, 148 (1994). It "is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Id.* (citations omitted). "The existence of a legal duty is a question of law to be decided by the court unless the existence of the duty 'depends on a determination of a dispute of material fact,' in which case a factual finding should be made by the jury." *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156, 160 (4th Cir. 1988) (citation omitted).

When determining the existence of a duty, courts generally consider, among other things:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Corinaldi v. Columbia Courtyard, Inc.*, 162 Md. App. 207, 219 (2005).

**A. Defendants May Be Liable for Third-Party Criminal Activity**

"Generally, in the absence of a statute, contract, or special relationship, the owner of a premises has no duty to protect a victim from the criminal acts of a third party." *Czach v. HH Annapolis, LLC*, No. BPG-20-125, 2022 WL 11949031, at *3 (D. Md. Oct. 20, 2022) (citation omitted); *see Restatement (Second) of Torts* § 314A (1965). A "special relationship" between the "parties can be established by either (1) the inherent nature of the relationship between the parties; or (2) by one party undertaking to protect or assist the other party, and thus often inducing reliance upon the conduct of the acting party." *Pulliam v. Motor Vehicle Admin.*, 181 Md. App. 144, 156 (2008) (citation omitted). A special relationship exists when one "is required by law to take or . . . voluntarily takes the custody of another under circumstance[s] such as to deprive the other of his normal opportunities for protection is under a similar duty to the other." *Id.* at 156–57 (citing *Restatement (Second) of Torts* § 314A (1965)). Although not adopted into Maryland law, the *Restatement (Third) of Torts: Liability for Physical and Emotional Harm* is instructive: "[s]pecial relationships" include "a custodian with those in its custody, if . . . the custodian is required by law to take custody or voluntarily takes custody of the other; and the custodian has a superior ability to protect the other," such as "nursing homes with their residents." *Restatement (Third) of Torts: Liability for Physical & Emotional Harm* § 40(b)(7) & cmt. n (2012).

There is a special relationship between the parties here. Defendants agreed to and were entrusted to care for Mrs. Doe in all aspects of her daily life: "bathing, dressing, toileting and other basic tasks." ECF No. 32-1, at 17. Further, Defendants "explicitly undertook to provide for Mrs. Doe's safety and security." *Id.* The residence agreement states that Independence Court "is locked at all times. Assistance from inside staff is required for entry. A camera system alerts staff to individuals entering and leaving" Independence Court. *Id.*; ECF No. 33, ¶ 16.6. Defendants were

also responsible for securing areas that residents, like Mrs. Doe, could not access or secure themselves. ECF No. 32-1, at 17–18. Thus, Defendants "voluntarily assumed responsibility" to care for Mrs. Doe, including "not only securing the door to Mrs. Doe's room but the entire property." *Id.* at 18.

Having established that the relationship between the parties "was sufficient to support a duty," the Court, assuming *Corinaldi*'s framework applies to this factual situation, considers the "knowledge necessary to establish a duty."[6] *See* 162 Md. App. at 221. "Ordinarily, a possessor of land is under no duty to protect an invitee from harm until the possessor knows or should know that the acts of a third party who causes harm are occurring or are about to occur." *Id.* "Maryland courts have recognized three types of 'conditions,' the knowledge or constructive knowledge of which may give rise to such a duty: (1) past occurrences of similar criminal activity on or nearby the premises; (2) prior similar conduct by the same [actor]; and (3) events just prior to and leading

[6] *Corinaldi* acknowledged that Section 320 of the *Restatement (Second) of Torts* provides for a duty to protect a person in custody but found the concept inapplicable because its facts involved guests at a hotel. 162 Md. App. at 220 n.3. Section 320 establishes a duty for "[o]ne who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal power of self-protection or to subject him to association with persons likely to harm him," provided the actor knows of their ability to control the conduct of third parties and knows of the necessity for exercising such control. Such a duty likely applies here. Mrs. Doe was helpless and depended on Defendants to protect her from third parties who might do her harm. Defendants knew that they had the ability to protect her from third parties (they exercised control over the doors at their facility) and that such protection was necessary (because of Mrs. Doe's inability to protect herself). Although it is not necessary for the Court to reach the issue because a jury could find that the third-party risk was foreseeable to Defendants, it does appear that Defendants may have had a duty to protect Mrs. Doe from third parties that is not constrained by *Corinaldi*'s three prerequisites of foreseeability. It is not just that assisted-living residents are more vulnerable than hotel guests. Defendants accepted responsibility for functions that Mrs. Doe was unable to perform herself, including maintaining the security of the premises. In the Court's view, Defendants could still be liable for negligence even if they could not foresee any specific risk from third parties because *any* contact with unscreened third parties could pose an unacceptable risk to Mrs. Doe. And fortunately, this duty is recognized in Maryland law, as discussed below.

up to the violent act at issue." *Jones v. Godfrey*, No. RWT-04-3379, 2008 WL 1701088, at *11 (D. Md. Mar. 3, 2008), *aff'd sub nom. Jones v. Hall*, 319 F. App'x 237 (4th Cir. 2009) (citing *Corinaldi*, 162 Md. App. at 221–24).

Here, the record contains no evidence of prior completed burglaries or sexual assaults at Independence Court, of similar criminal activity nearby, or of prior criminal acts by the same assailant. *See DiNardo v. It's My Amphitheater, Inc.*, No. CBD-19-1841, 2022 WL 580866, at *7 (D. Md. Feb. 25, 2022). Thus, there is nothing "that may have provided Defendant[s] with foreseeable notice of prior similar conduct." *Id.* However, there is a factual dispute as to the events just prior to and leading up to the attack.

A witness (Ms. West) may have reported to Independence Court employees that an unknown male individual was in the dumpster area directly outside of the exterior kitchen door prior to the attack. ECF No. 32-1, at 4. Defendants argue that knowledge of the mere presence of an unknown man in the dumpster area outside of the kitchen door of Independence Court was insufficient to put Defendants on notice that Mrs. Doe was in imminent danger of violent harm under *Corinaldi*. ECF No. 47, at 11–12. And Defendants present several arguments that a jury might credit to reject Ms. West's testimony: she did not call 911 or ask Independence Court to call 911; she had dinner with her mother at Independence Court; and she made small talk with staff in the lobby of Independence Court. *Id.* But at this stage, the Court must view the evidence in the light most favorable to Mrs. Doe, and the disputed facts go beyond what Defendants describe in their Reply. Ms. West says that shortly before the assault, she reported an unknown man in the dumpster area immediately outside the nonpublic exterior kitchen door. The Court agrees that the presence of an unknown individual outside this door would not, without more, establish that violent criminal activity is imminent. But Ms. West's account cannot be considered in isolation.

Ms. West alerted employees to a man standing outside an entrance that was not designed for public use. There is evidence that the door had previously failed to close and secure properly, that Defendants knew of this problem, and that the unlocked door would permit entry into the residential area of Independence Court, including the living spaces of its vulnerable residents. If a jury accepted these facts, the jury could find that Defendants had notice of a security threat with sufficient time to investigate and address the threat before Mrs. Doe was assaulted.

There is also evidence from which a reasonable jury could infer that the exterior door was not properly secured on the night of the attack, and that Defendants were aware of potential issues with the door. *Id.* at 5–7, 24–25; *see also* ECF No. 37, at 291:3–293:1, 296:2–20. Further, Mrs. Doe provided evidence that Defendants knew they were responsible for locking her door but left it unlocked. ECF No. 32-1, at 3–4. Although the existence of a duty is "ordinarily a legal question for the court to decide," whether Defendants owed a duty to Mrs. Doe is predicated in part on disputed facts about whether the attack was foreseeable, which must be decided by a jury. *Todd v. Mass Transit Admin.*, 373 Md. 149, 159 (2003). Considering those disputed facts in the light most favorable to Mrs. Doe, the non-moving party, a reasonable jury could find that "imminent harm was foreseeable." *Mitchell v. Rite Aid of Md., Inc.*, 257 Md. App. 273, 319 (2023).

Further, "even if no duty existed to employ the particular level of security measures provided by the defendants, improper performance of such a voluntary act could in particular circumstances constitute a breach of duty." *Scott v. Watson*, 278 Md. 160, 171 (1976); *cf. Hemmings v. Pelham Wood Ltd. Liab. Ltd. P'ship*, 375 Md. 522, 546–47 (2003) ("Once a landlord takes reasonable security measures to eliminate conditions that contribute to criminal activity on the premises, all of its duties with respect to those measures have not been fulfilled necessarily. Rather, a landlord has a continuing obligation to properly carry out the security measures it

provides.”). Because of the vulnerability of Defendants’ elderly residents, including Mrs. Doe, Defendants apparently had measures in place to protect them, including requiring all employees, residents, and guests to enter through the same secured lobby doors, and keeping the kitchen door and the door to Mrs. Doe’s room locked. ECF No. 31-1, ¶ 4; ECF No. 32-1, at 1, 17–18; ECF No. 37, at 100:20–101:2, 104:16–105:5. Yet despite voluntarily undertaking these measures (or perhaps undertaking them because they are required under Maryland law, as discussed below), there is evidence that Defendants failed to carry out these measures, and that this failure left Mrs. Doe vulnerable to the attack by the assailant. ECF No. 32-1, at 3. Again, resolving these questions involves facts that are in dispute. But if a jury resolves certain disputed facts in Mrs. Doe’s favor, and a reasonable jury could make such a finding when the facts are viewed in the light most favorable to Mrs. Doe, the Court would have an alternative basis to conclude that Defendants’ failure to comply with its own security procedures was a breach of its duty.

Accordingly, Defendants’ Motion will be denied.

### B. Mrs. Doe Can Pursue a Theory of Liability Under the Statute or Ordinance Rule

Maryland does not recognize a separate cause of action for negligence per se; instead, under the “Statute or Ordinance Rule,” “a statute or an ordinance can permit a plaintiff to prove that a defendant owed the plaintiff a duty, and that a defendant breached that duty.” *In re Marriott Int’l, Inc., Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2020 WL 6290670, at *9 (D. Md. Oct. 27, 2020); *Kiriakos v. Phillips*, 448 Md. 440, 457 (2016). “Under Maryland law, to successfully plead that defendant’s violation of a law or ordinance is evidence of negligence, a plaintiff must establish that: (1) they are members of a specific class of people that the statute or ordinance is designed to protect; and (2) that violation of the statute or ordinance proximately caused their injury.” *In re Marriott Int’l, Inc.*, 2020 WL 6290670, at *9; *see also Walton v. Premier Soccer*

*Club, Inc.*, 490 Md. 204, 223 (2025) (explaining that "a cause-and-effect relationship between the statutory violation and the injury is required," and that a plaintiff must demonstrate both causation-in-fact and legal causation to prevail under the Statute or Ordinance Rule).

Mrs. Doe argues in her Opposition that Defendants violated Maryland statutes and regulations governing the mandated security measures at assisted-living facilities, thereby establishing a prima facie case for negligence.[7] *See* ECF No. 32-1, at 12–16. Defendants argue that Mrs. Doe failed to raise a Statute or Ordinance Rule theory prior to the briefing for this Motion and therefore waived this argument. ECF No. 47, at 6–7.

"[W]hile a plaintiff is not required to allege every fact upon which it will rely at summary judgment, 'that does not mean that a plaintiff may plead one theory and one set of facts in his complaint, and then proceed to trial on an entirely different theory supported by entirely different facts.'" *Wilson v. Eagle Nat'l Bank*, No. JRR-20-01344, 2026 WL 1719362, at *9 (D. Md. June 15, 2026) (quoting *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 154 (4th Cir. 2020)). "Proceeding as such 'undermines the complaint's purpose and can thus unfairly prejudice the defendant.'" *Id.* (quoting *Harris v. Reston Hosp. Ctr., LLC*, 523 F. App'x 938, 946 (4th Cir. 2013)). "In considering whether such a practice unfairly prejudices the defendant, the court is concerned with whether the defendant had fair notice of the claim and the evidence it needs to adduce to defend itself." *Id.* (citations omitted). "The focus of the notice afforded the defendant is on the

[7] Although Mrs. Doe cites to Md. Code Regs. (C.O.M.A.R.) 10.01.14.44 (which concerns sewage), the regulation she quoted is C.O.M.A.R. 10.07.14.45 ("Security"). The Court assumes that Mrs. Doe argues that Defendants violated C.O.M.A.R. 10.07.14.45, which requires assisted-living facilities to provide lockable exterior doors and windows and an effective automated device or system to alert staff to individuals entering or leaving the building (unless the door is "staffed by a receptionist or other staff member who views and maintains a log of individuals entering and leaving the facility"). C.O.M.A.R. 10.07.14.45. Here, the evidence permits a finding that the exterior kitchen door did not reliably close and lock, was not equipped with an automated alert, and was not staffed or otherwise monitored in the manner contemplated by the regulation.

factual, not the legal, basis of the plaintiff's claim." *Nat'l Fed'n of the Blind, Inc. v. Loompanics Enters., Inc.*, 936 F. Supp. 1232, 1243 (D. Md. 1996). "Notice of the underlying facts is sufficient if the complaint sets forth the circumstances, occurrences, and events which, if proven, would entitle the claimant to the relief sought." *Id.* (citation omitted). "In fact, the claimant need not set forth any theory or demand any particular relief for the court will award appropriate relief if the plaintiff is entitled to it on any theory." *Id.* (citation modified) (citation omitted).

The Court rejects Defendants' argument that they were deprived of fair notice on Mrs. Doe's Statute or Ordinance Rule theory. Mrs. Doe specifically stated that her negligence claims fall under premises liability and respondeat superior theories. Although the Complaint does not explicitly reference the Statute or Ordinance Rule or allege a statute, regulation, or ordinance that Defendants purportedly violated, the alleged conduct underlying her theory (Defendants' operation of an assisted-living facility, their obligation to secure its entrances, and the allegedly unsecured and unmonitored exterior kitchen door) was part of this case from the outset. Mrs. Doe alleges that Defendants regularly engaged in business as an assisted-living facility in Maryland. ECF No. 1-1, ¶¶ 47, 55. She also alleges that Defendants owed her a "duty of care commensurate with the law, including, but not limited to, the duty to maintain sufficient security measures to prevent and/or deter foreseeable harm to individuals on the premises that would enhance the likelihood of harm to those individuals." *Id.* ¶¶ 49, 57. She repeatedly alleges that the facility lacked sufficient security measures to protect its residents. *See id.* ¶¶ 25, 29, 31, 39, 41. Thus, the Complaint contains sufficient factual allegations to give Defendants notice that she may raise a Statute or Ordinance Rule theory. So long as Defendants exercised reasonable diligence in conducting discovery, it is unclear how they might have been prejudiced. They have not identified evidence that they would have sought in discovery, or defenses that they were unable to develop because of Mrs. Doe's

decision not to include certain statutory and regulatory references in her Complaint. Defendants also "had an opportunity to respond to the merits" of Mrs. Doe's purported Statute or Ordinance Rule in their Reply but did not do so. *Salmon v. Cable & Wireless USA, Inc.*, No. AW-01-394, 2003 WL 1730413, at *3 (D. Md. Mar. 18, 2003) (citation omitted). Accordingly, the Court finds Defendants are not unfairly prejudiced by Mrs. Doe raising this theory in her Opposition.

The Court declines to grant summary judgment in Defendants' favor on the ground that Mrs. Doe is barred from relying on statutory or regulatory violations as evidence to support her negligence claim. Mrs. Doe may proceed on her negligence claim under a Statute or Ordinance Rule theory. And this theory provides an alternative basis for the Court to deny summary judgment to Defendants. Viewing the facts in the light most favorable to Mrs. Doe, a reasonable jury could conclude that Defendants violated C.O.M.A.R. 10.07.14.45 and that this violation proximately caused Mrs. Doe's injury.[8]

## IV. CONCLUSION

For the above reasons, Defendants' Motion will be **DENIED**. An accompanying Order follows.

| | |
|---|---|
| October 16, 2026 | /s/ |
| Date | Timothy J. Sullivan<br>Chief United States Magistrate Judge |

[8] The Court assumes that the parties do not dispute that Mrs. Doe was a member of the specific class of people that the regulation was designed to protect. *See generally Kiriakos v. Phillips*, 448 Md. 440, 460 (2016); *Blackburn Ltd. P'ship v. Paul*, 438 Md. 100, 125 (2014).